1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11                                          No. C 06-01050 CW
JEFFREY RICHARD INGLETT,
12                                          ORDER DENYING
          Petitioner,                       PETITION FOR WRIT OF
13                                          HABEAS CORPUS
     v.
14
WARDEN D. ADAMS, et al.,
15
          Respondent.
16  ─────────────────────────────────────/

17
     On November 02, 2007, Petitioner Jeffrey Richard Inglett, a
18
state prisoner incarcerated at the Corcoran State Prison (Corcoran)
19
in Kings County, California, filed a petition for a writ of habeas
20
corpus, pursuant to 28 U.S.C. § 2254, alleging that his
21
constitutional rights were violated when the Board of Parole
22
Hearings[1] (the Board) denied him parole for the second time on May
23
25, 2003.  As grounds for federal habeas relief, Petitioner claims
24
that "some evidence" did not support the Board's denial of parole,
25
the Board improperly relied on his commitment offense to deny
26

27       [1]The Board of Prison Terms was abolished effective July 1,
2005, and replaced with the Board of Parole Hearings.  Cal. Penal
28  Code § 5075(a).

United States District Court
For the Northern District of California

parole, and he reasonably relied on his plea agreement to believe that he would be released in seventeen to twenty years.  On March 17, 2008, Respondent Warden D. Adams filed an answer.  Petitioner timely filed a traverse.  On November 11, 2007, Petitioner filed a petition for writ of mandamus to expedite review of his habeas petition which was denied by the Court on December 18, 2007. (Docket # 4).  Having considered all of the papers filed by the parties, the Court DENIES the petition for writ of habeas corpus.

BACKGROUND

I. Personal History

     Petitioner started "drinking and doing drugs" around age twelve.  (Pet.'s Ex. B, 2003 Parole Bd. Hr'g at 20.)  At the age of sixteen, Petitioner completed the ninth grade and discontinued his high school education.  (<u>Id.</u> at 22.)  He explained that he stopped going to school "because at that time I was more active on getting high and drinking than previously.  I really wasn't sober enough to go to school."  (<u>Id.</u>)

II.  Prior Criminal Record

     In January, 1980, when Petitioner was fourteen years old, he was arrested and convicted of attempted burglary and placed on probation.  (<u>Id.</u> at 14; Resp's Ex. B, Probations Report at 11.)  In January, 1981, at the age of sixteen years, Petitioner was arrested and convicted of selling marijuana, sent to camp and then released on probation.  (Pet.'s Ex. B at 14-15; Probation Report at 11.)  In June, 1981, Petitioner was charged and convicted of malicious mischief for fighting and vandalizing cars and sentenced to one year at "fire camp"; within the same month he was convicted of vandalism, for which he was sentenced to one year at the Youth

**United States District Court**
For the Northern District of California

Correctional Center and two years probation.[2]  (Pet's Ex. B at 16, 17; Probation Report at 12.)

III. Commitment Offense

In 1983, when Petitioner was seventeen years of age, he and a crime partner entered a home in San Diego, California, with the intent to rob.  (Id. at 9.)  Petitioner was under the influence of methamphetamines.  (Id. at 10.)  Mrs. Anna Wurtz, the owner of the home, was an eighty-six year old woman.  (Id. at 62.)  Mrs. Wurtz, who was asleep when Petitioner and his crime partner entered the home, awoke during the course of the burglary.  (Id. at 9.)  Petitioner grabbed Mrs. Wurtz, put a knife to her throat, and told her not to scream.  (Id.)  Mrs. Wurtz screamed and Petitioner slit her throat, struck her, and stabbed her about ninety times.  (Id. at 9-10, 62.)  Petitioner then set fire to Mrs. Wurtz' hair and to her home.  (Id. at 11.)

IV.  Parole Hearings

In January, 1999, Petitioner had his first hearing before the Board, which found that he was unsuitable for parole.  (Traverse, Ex. A, 1999 Parole Bd. Decision at 1.)  In support of its finding, the Board cited the dispassionate and especially cruel and callous manner in which the commitment offense was carried out, Petitioner's escalating pattern of criminal conduct as a youth, his "persistent pattern of tumultuous relationships," his drug and alcohol abuse, his failure to profit from society's efforts to rehabilitate him prior to his commitment offense and his failure to upgrade educationally and vocationally while in prison.  (Id. at 1-

---

[2]Petitioner's full criminal record was not discussed at the 2003 hearing.

United States District Court
For the Northern District of California

2.)  The Board commended Petitioner for having remained discipline-free for eleven years and his recent excellent work reports.  (Id. at 2-3.)  The Board recommended that Petitioner remain disciplinary-free, reduce his custody level, and continue getting good reports.  (Id. at 4.)

In May, 2003, Petitioner attended his second parole hearing. (Pet.'s Ex. B, 2003 Parole Bd. Hr'g at 1.)  This is the hearing at issue in this petition.  The Board noted that during his incarceration, Petitioner had improved his education and vocational skills and had participated in various self-help activities.  (Id. at 78-79.)  Petitioner also passed his General Education Development Test (GED) and completed various college-level courses: in 1994, he completed a program in Biblical studies; in 1999, he completed a small business management course; in 2002, he completed a certified washroom technician course; and, in 2003, coinciding with his second hearing before the Board, Petitioner was enrolled in a course entitled "National Association of Institutional Linen Management."  (Id. at 24-27.)

At the time of his 2003 hearing, Petitioner was working full-time in Corcoran's laundry maintenance department (PIA), where he began working in 1996.  (Id. at 30.)  In 2000, Petitioner had been assigned as PIA's "lead man mechanic."  (Id. at 26.)  Petitioner received all satisfactory to above-average marks for his work in PIA and received letters of appreciation from PIA superintendents in 1999, 2002, and 2003.  (Id. at 30.)

Petitioner received eight certificates in 2002 from Visions Adult School, a journaling self-study course, which included: Chemical Dependence Interactive Journaling, Anger Interactive

4

Journaling, Breaking Free Interactive Journaling, the Con Game, Coping Skills, Feelings, Life Management, and My Change Plan. (<u>Id.</u> at 33.)  Petitioner was involved in a self-study AA and NA program, in which he corresponded with a minister to work through "The Big Book," and "the twelve steps." (<u>Id.</u> at 34.)  Petitioner testified that Corcoran did not offer NA or AA programs but that he was working with others to bring the programs to the prison. (<u>Id.</u>)

Clinical psychologist Marion Chiurazzi noted factors weighing in favor of granting parole, including: "an available support system, feasible parole plans, a good job skill and habits, and demonstrated improvement in his willingness to comply with rules and authority over an extended period of time." (<u>Id.</u> at 40.) Petitioner was commended by the clinical psychologist for remaining disciplinary-free and maintaining a stable work record. (<u>Id.</u> at 41.)  Dr. Chiurazzi stated that Petitioner's continuing risk factors included "his history of substance dependence and anti-social violent behaviors and incomplete responsibility taking and insight" into his commitment offense. (<u>Id.</u>)  Dr. Chiurazzi recommended that Petitioner participate in a substance abuse treatment program or support group, and a lifer or other psycho-educational group.  (<u>Id.</u>)

Upon release, Petitioner's plans included living with his mother or with his fiancee, a woman whom he met when he was nine years old and who is in AA.  (<u>Id.</u> at 45.)  His plans also included working as an electrician and plumber for his brother who was employed as a superintendent for a large mechanical corporation and was responsible, in part, for hiring. (<u>Id.</u> at 46-47.)  The Board also reviewed letters of support from Petitioner's grandmother and

grandfather, mother and step-father, father and step-mother, two siblings, brother-in-law, sister-in-law, fiancee, and aunt. (Id. at 47-51.)  Petitioner testified that he intended to join an AA program "immediately on parole." (Id. at 50.)  The San Diego police department and members of the victim's family submitted letters opposing parole.

Although the Board commended Petitioner for remaining disciplinary-free, for participating in the Visions Adult School and for developing his vocational and educational skills, it found that Petitioner would remain a risk until he participated in sufficient self-help programs to learn how to cope with stress in a non-destructive manner. (Id. at 78-79.)  The Board noted that the Petitioner's gains were recent and found that he must demonstrate his ability to maintain those gains over an extended period of time. (Id. at 78.)  The Board cited Petitioner's escalating pattern of criminal conduct and violence leading up to his commitment offense, the especially cruel and callous manner in which he perpetrated the commitment offense, his unpredictability, failure to assume full responsibility for the offense, lack of insight regarding the offense, and lack of a sufficient plan to insure he does not relapse into drug or alcohol addiction upon release. (Id.)  The Board recommended that Petitioner remain disciplinary-free, continue to upgrade vocationally, and participate in self-help programs.[3] (Id. at 80.)

---

[3]In October 10, 2007, Petitioner attended his third parole hearing. (Pet.'s Ex. A, 2007 Parole Bd. Decision at 1.)  The Board denied parole for two years. (Id. at 7.)  This decision is not before the Court in this petition.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

V. Habeas Corpus Petitions

On October 14, 2003, Petitioner filed a petition for a writ of habeas corpus in San Diego County superior court, alleging that there was no evidence to support the Board's 2003 determination that he was not suitable for parole and that the decision violated his due process rights. (Respondent's Answer, Ex. D.)  On November 11, 2003, in a four-page opinion, the court denied the petition. (Id.)  The court held that there was sufficient evidence to support the Board's decision that Petitioner was not yet suitable for parole, including the nature of the commitment offense, Petitioner's record of violence and assaultive behavior which continued after imprisonment, his previous drug and alcohol dependance, the need for further participation in self-help programs, and the inadequacy of Petitioner's parole plans. (Respondent's Answer, Superior Court Decision, Ex. D. at 3.)  The court also found that Dr. Chiurazzi's psychological evaluation of Petitioner expressed reservations about his risk for recidivism in light of his volatile and violent adolescence and his drug dependence, his initial disciplinary record while in prison, the need to continue in a twelve-step program and to establish his ability to sustain the positive growth made during incarceration. (Id.)

On February 2, 2004, Petitioner raised the same claims in his petition to the California court of appeal. (Respondent's Answer, Ex. E.)  On February 9, 2004, in a two-page opinion, the court denied the petition. (Respondent's Answer, Court of Appeal Decision, Ex. E. at 1.)  The court found that the facts of the crime, Petitioner's criminal record, and his unstable social

1  history supported the Board's decision that Petitioner posed an

2  unreasonable risk of danger to society and a threat to public

3  safety if he were released on parole.  (<u>Id.</u> at 2.)  Petitioner then

4  filed a petition for review with the California Supreme Court,

5  which summarily denied it on February 2, 2005.  (Respondent's

6  Answer, Ex. F.)  Respondent concedes that Petitioner exhausted his

7  state court remedies.  (Resp't's Answer at 3.)  On February 1,

8  2006, Petitioner timely filed this federal habeas petition.

9                          LEGAL STANDARD

10       Under the Antiterrorism and Effective Death Penalty Act of

11  1996 (AEDPA), a district court may not grant habeas relief unless

12  the state court's adjudication of the claim: "(1) resulted in a

13  decision that was contrary to, or involved an unreasonable

14  application of, clearly established Federal law, as determined by

15  the Supreme Court of the United States; or (2) resulted in a

16  decision that was based on an unreasonable determination of the

17  facts in light of the evidence presented in the State court

18  proceeding."  28 U.S.C. § 2254(d); <u>Williams v. Taylor</u>, 529 U.S.

19  362, 412 (2000).  The first prong applies both to questions of law

20  and to mixed questions of law and fact, <u>Williams</u>, 529 U.S. at

21  407-09, and the second prong applies to decisions based on factual

22  determinations, <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

23       A state court decision is "contrary to" Supreme Court

24  authority, that is, falls under the first clause of § 2254(d)(1),

25  only if "the state court arrives at a conclusion opposite to that

26  reached by [the Supreme] Court on a question of law or if the state

27  court decides a case differently than [the Supreme] Court has on a

28  set of materially indistinguishable facts."  <u>Williams</u>, 529 U.S. at

412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ. Id. at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." Miller-El, 537 U.S. at 340.  A petitioner must present clear and convincing evidence to overcome the presumption of correctness under § 2254(e)(1); conclusory assertions will not do. Id.  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion of the highest court to analyze whether the state judgment was erroneous under the standard of § 2254(d). Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991); Shackleford v. Hubbard, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).  In the present case, the California court of appeal is the highest court that addressed Petitioner's claims.

United States District Court
For the Northern District of California

9

DISCUSSION

I. "Some Evidence" Test

Petitioner argues that the Board's decision finding him unsuitable for parole violated his due process rights because it was not supported by some evidence and, therefore, was arbitrary.

The Supreme Court has clearly established that a parole board's decision deprives a prisoner of due process with respect to his constitutionally protected liberty interest in a parole release date if the board's decision is not supported by "some evidence in the record," or is "otherwise arbitrary." Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006) (citing Superintendent v. Hill, 472 U.S. 445, 457 (1985)).  An examination of the entire record is not required nor is an independent weighing of the evidence.  Id.  The "some evidence" standard is minimal, and assures that "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." Sass, 461 F.3d at 1129 (quoting Hill, 472 U.S. at 457).  The relevant question is whether there is some evidence in the record that could support the conclusion reached by the administrative board.  Hill, 472 U.S. at 455.

When assessing whether a state parole board's unsuitability determination is supported by "some evidence," the court's analysis is framed by the guidelines set forth in the statutes and regulations governing parole suitability determinations in the relevant state.  Sass, 461 F.3d at 1128.  California law provides, "Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the [Board] the prisoner will pose an unreasonable risk of danger to

society if released from prison."  Cal. Code Regs. (C.C.R.) title 15, § 2404(a).[4]  The Board is required to consider "all relevant, reliable information available," such as:

> the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release.  Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

C.C.R. § 2404(b).

Circumstances tending to show unsuitability for parole include the nature of the commitment offense and whether "[t]he prisoner committed the offense in an especially heinous, atrocious or cruel manner."  C.C.R. § 2402(c).  This includes consideration of the number of victims, whether "[t]he offense was carried out in a dispassionate and calculated manner," whether the victim was "abused, defiled or mutilated during or after the offense," whether "[t]he offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering," and whether "[t]he motive for the crime is inexplicable or very trivial in relation to the offense."  Id.  Other circumstances tending to show unsuitability for parole are a previous record of violence, an unstable social history, previous sadistic sexual offenses, a history of severe mental health problems related to the offense,

---

[4]All further references to the California Code of Regulations are to Title 15.

11

1   and serious misconduct in prison or jail.   Id.

2       In contrast, circumstances tending to support a finding of

3   suitability for parole include no juvenile record, a stable social

4   history, signs of remorse, that the crime was committed as a result

5   of significant stress in the prisoner's life, a lack of criminal

6   history, a reduced possibility of recidivism due to the prisoner's

7   present age, that the prisoner has made realistic plans for release

8   or has developed marketable skills that can be put to use upon

9   release, and that the prisoner's institutional activities indicate

10  an enhanced ability to function within the law upon release.

11  C.C.R. § 2402(d).

12      Applying these guidelines here, the California court of

13  appeal's determination that Petitioner "would pose an unreasonable

14  risk of danger to society or a threat to public safety if released

15  from prison" was supported by the evidence of Petitioner's

16  commitment offense, his extensive criminal record prior and

17  subsequent to incarceration, his substance abuse and his unstable

18  social history.   Furthermore, although the "cruel and callous"

19  nature of Petitioner's commitment offense factored into the Board's

20  determination, Petitioner's escalating pattern of criminal conduct

21  and violence leading up to his commitment offense, his

22  unpredictability, his failure to assume full responsibility and

23  lack of insight regarding the offense, and the insufficiency of his

24  plan to prevent relapse into drug or alcohol addiction upon release

25  also weighed against parole.

26      Despite the evidence that the court of appeal cited to support

27  its decision, Petitioner argues that his young age at the time of

28  the commitment offense and the district attorney's plea offer

justify granting parole.  He asserts that he was told by his
parents, his attorney and the district attorney that he would be
released in seventeen to twenty years.  However, Petitioner does
not attach the plea bargain to his petition or traverse.
Petitioner attaches the transcript of the hearing on his plea of
guilty which reveals that the court warned Petitioner that the
maximum penalty for the crimes to which he was pleading guilty was
twenty-six year to life with a possibility of an extra seven years
for the arson.  Traverse, Ex. C at 9.  Petitioner responded that he
understood the possible sentence.  Id.  The court did not tell him
that he would be paroled in seventeen to twenty years.

The superior court addressed Petitioner's argument that his
continued incarceration violated his plea agreement.  The court
denied the claim because Petitioner failed to meet the burden of
supporting his claim by failing to provide a copy of his guilty
plea or a transcript of those proceedings establishing that he was
promised he would be paroled after seventeen years as a condition
of his plea.  Resp's Ex. D, In the Matter of the Application of
Jeffrey Inglett, at 4.

Plea agreements with specific promises are enforceable.
Santobello v. New York, 404 U.S. 257, 262 (1971) ("when a plea
rests in any significant degree on a promise or agreement of the
prosecutor, so that it can be said to be a part of the inducement
or consideration, such promise must be fulfilled"); Brown v. Poole,
337 F.3d 1155, 1161 (9th Cir. 2003).  Should the government breach
such a promise, the defendant can seek to withdraw from the plea
agreement or demand specific performance.  United States v.
Sandoval-Lopez, 122 F.3d 797, 800 (9th Cir. 1997).

13

United States District Court
For the Northern District of California

Apparently, Petitioner has tried to remedy the deficiency noted by the state court by submitting a copy of the transcript of his plea hearing.  However, the transcript does not support his claim that he was promised a sentence of seventeen to twenty years, or that he would be paroled in that length of time.  Indeed, the transcript suggests that Petitioner was or should have been aware that his guilty plea would not secure a reduced sentence.  Thus, as in his state petition, Petitioner has failed to show the existence of such a plea contract establishing that he would receive a seventeen to twenty year sentence in exchange for his guilty plea. Therefore, the state court's denial of this claim was not contrary to or an unreasonable application of Supreme Court authority.

The Court cannot re-weigh evidence already considered by the Board.  Hill, 472 U.S. at 455.  Instead, the Court looks only to see if the record supports the minimally stringent "some evidence" standard.  Id.  Because some evidence supports the court of appeal's finding that Petitioner was unsuitable for parole, its decision complied with the requirements of due process in accordance with the Ninth Circuit's holding in Sass, 461 F.3d at 1128.  Therefore, the court of appeal's denial of this claim was not contrary to, or an unreasonable application of, clearly established federal law.

II. Immutable Circumstances

Petitioner argues that, in denying parole, the Board violated his right to due process by relying on the immutable circumstances of the commitment offense.

The Ninth Circuit holds that the denial of parole based solely on the gravity of the commitment offense can initially satisfy due

14

1   process requirements.   Biggs v. Terhune, 334 F.3d 910, 916 (2003).

2   However, in dicta, the Biggs court stated that "continued reliance

3   in the future on an unchanging factor, the circumstance of the

4   offense and conduct prior to imprisonment, runs contrary to the

5   rehabilitative goals espoused by the prison system and could result

6   in a due process violation."   Id. at 917.

7        Here, the California court of appeal correctly found that the

8   Board relied on more than the "unchanging factor" of Petitioner's

9   commitment offense and criminal history in denying him parole.

10       However, the Ninth Circuit's evolving guidance in Biggs, Sass,

11  and Irons suggests that the Board may continue to evaluate static

12  factors, including the nature of the commitment offense and

13  pre-conviction criminality, in deciding whether to grant parole.

14  See Sass, 461 F.3d at 1129.   The weight to be attributed to those

15  immutable events, however, should decrease as a predictor of future

16  dangerousness as the years pass and the prisoner demonstrates

17  favorable behavior.   See Biggs, 334 F.3d at 916-17; Irons, 505 F.3d

18  at 851.   Should Petitioner follow the Board's advice, continued

19  parole denials based on Petitioner's commitment offense alone could

20  eventually give rise to a due process violation.   See Biggs, 334

21  F.3d at 916-17.

22                              CONCLUSION

23       For the foregoing reasons, the petition for a writ of habeas

24  corpus is DENIED.   The Clerk of the Court shall enter judgment and

25  close the file.

26       IT IS SO ORDERED.

27  Dated: 9/30/09                 _____

28                                 CLAUDIA WILKEN
                                   United States District Judge